UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHAZIA KASHIF,<br><br>    Plaintiff,<br><br>v.<br><br>PNC BANK, N.A.,<br><br>    Defendant. | Civil No. 1-20-cv-01118-MSN-TCB |

**MEMORANDUM OPINION**

This matter comes before the Court on defendant PNC Bank, N.A.'s Motion for Summary Judgment (Dkt. No. 23). On September 24, 2020, plaintiff Shazia Kashif brought suit in this Court, alleging that defendant violated the antiretaliation provisions of the Sarbanes-Oxley Act ("SOX") when—after plaintiff complained to her supervisor about her colleagues' conduct—it placed her on paid administrative leave and then, after plaintiff resigned, refused to accept her subsequent attempt at rescission. Defendant moves for summary judgment by arguing, *inter alia*, that plaintiff has failed to carry her burden of establishing a *prima facie* case that (1) she suffered an "unfavorable personnel action" and (2) her internal complaints contributed to the personnel action defendant took. For the reasons stated below, the Court finds that plaintiff has failed to meet her burden. Accordingly, defendant's motion shall be granted and judgment entered in favor of defendant.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Pursuant to Local Rule 56(B), defendant included fifty-six paragraphs in its statement of undisputed facts. *See* Def.'s Stmt. of Facts ("SOF") (Dkt. No. 24) at 2-12. Plaintiff disputes twenty-

nine of those paragraphs in her opposition brief. *See* Pl. Br. at 4–14. However, plaintiff fails to properly address many of the constituent facts contained within those disputed paragraphs. After careful examination of the record and as set forth below, the Court finds certain facts to be undisputed despite plaintiff's efforts to place them in dispute. *Cf. Cincinnati Ins. Co. v. American Glass Indus.*, Case No. 1:07-cv-1133-JCC, 2008 WL 4642228, at *1 (E.D. Va. Oct. 15, 2008) ("the Court assumes that facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief") (internal quotations omitted).

The following facts are taken from the undisputed paragraphs of defendant's Local Rule 56(B) statement as well as the undisputed portions of otherwise disputed paragraphs.[1]

1. PNC hired plaintiff on June 20, 2016, at PNC's Hilltop Village Center branch located in Alexandria, Virginia. SOF ¶ 1.

2. Defendant has established procedures for investigating and remediating allegations of employee misconduct. SOF ¶¶ 4–13. On September 16, 2019, defendant's Employee Relations Information Center ("ERIC") assigned Employee Relations Investigator Latisha Agurs to investigate the employee conduct underlying a customer complaint filed by an individual named W.A. SOF ¶ 18. Plaintiff's conduct was the focus of that complaint. *Id.* This was not the first investigation of plaintiff's conduct that defendant assigned to Ms. Agurs. SOF ¶¶ 14–16.

3. On September 17, 2019, the day Ms. Agurs opened her investigation of the W.A. complaint, plaintiff orally reported to her supervisor, Evguenia Bouairi, that she believed a colleague named C.A. had bundled a checking and savings account without the customer's

---

[1] As stated during oral argument on May 21, 2021, the Court will not consider plaintiff's own statement of material facts, Pl. Br. at 14–20, because non-moving parties may respond to a motion for summary judgment only in the manner provided by the Federal and Local Rules of Civil Procedure. *See* Fed. R. Civ. P. 56, E.D. Va. Loc. R. 56.

knowledge. SOF ¶ 32.[2] There is no evidence that Ms. Bouairi escalated this complaint to ERIC or Ms. Agurs.

4. On October 18, 2019, more than one month after Ms. Agurs opened her investigation into the employee conduct underlying W.A.'s complaint, plaintiff advised Ms. Bouairi that she believed C.A. had stolen $5 from a client's deposited funds in an effort to force the client's cash deposit to balance. SOF ¶ 28.[3]

5. Ms. Bouairi reported the incident to ERIC, which assigned the investigation to Ms. Agurs and a member of PNC's Employee Fraud Investigations Department. SOF ¶¶ 29–30.[4]

6. On October 23, 2019, plaintiff also reported to Ms. Bouairi that she believed C.A. and a second coworker (A.K.) had improperly allowed a customer to submit a joint loan application without one of the applicants being present. SOF ¶ 37. There is no evidence that Ms. Bouairi escalated this complaint to ERIC or Ms. Agurs.

7. On November 22, 2019, Ms. Agurs concluded her investigation into plaintiff's complaint that C.A. had stolen $5 from a client's cash deposit. Ms. Agurs determined that plaintiff's allegations were unsubstantiated. SOF ¶ 31.

8. After Ms. Agurs completed her investigation of C.A., she returned to her

---

[2] Plaintiff, in opposing defendant's motion for summary judgment, states that she disputes this fact. *See* Pl. Br. ¶ 32. A true reading of her explanation for *why* she disputes the fact, however, shows only that she disagrees with the level of detail contained in defendant's version—not the truth of the factual statement provided. Such disagreement does not render the fact controverted. Nor should plaintiff wish it to be, given that the language provided is consistent with the allegations contained in plaintiff's complaint: "On September 17, 2019, [plaintiff] verbally reported to Ms. Bouairi [*sic*] that [C.A.] . . . had opened an account without the customer's consent and presence, by opening separate checking and savings accounts and packaging them as a product called Virtual Wallet." Compl. (Dkt. No. 1) at ¶ 20.

[3] Plaintiff again purports to dispute this fact. Pl. Br. ¶ 28. But plaintiff does not dispute that she raised this complaint to Ms. Bouairi on the date stated. Nor does she dispute the date on which Ms. Agurs opened her investigation involving W.A. Instead, plaintiff disputes only the progress Ms. Agurs had made on the W.A. complaint as of October 18, 2019. The point, as written, is uncontroverted.

[4] Although plaintiff disputes defendant's paragraph 30, her explanation of that dispute does not challenge defendant's statement that a member of defendant's Employee Fraud Investigations Department was assigned to the matter, along with Ms. Agurs. *See* Pl. Br. ¶ 30.

3

investigation of the customer complaint involving W.A. SOF ¶ 41.[5]

9. Through that investigation, Ms. Agurs concluded that on September 3, 2019, plaintiff upgraded W.A.'s account from a standard account to an account that required a higher minimum balance (to avoid service charges) and had higher fees. Then, plaintiff processed a single $500 withdrawal from W.A.'s account. SOF ¶ 19.[6]

10. Ms. Agurs also concluded that: (1) the individual with whom plaintiff met, and to whom she gave $500 from W.A.'s account, was not W.A; (2) the same individual entered plaintiff's office, provided her with an orange debit card and some form of identification, and left plaintiff's office with cash, but without receipt, papers, or disclosures; and (3) plaintiff inputted identification information for W.A. during the transaction at issue. SOF ¶¶ 26–27.[7]

11. Accordingly, Ms. Agurs's investigation file included a finding that plaintiff engaged in sales manipulation and falsification of customer information when plaintiff improperly conducted a transaction for a stranger without verifying the identity of the person. Ms. Agurs's investigation file also concluded that plaintiff engaged in dishonesty during the investigation by stating that she would not have upgraded a client's account if the client was not physically present in the branch when plaintiff had in fact done so in this instance. Finally, Ms. Agurs's investigation file reflected that plaintiff was not truthful when she stated that she provided the client with paperwork and disclosures regarding the account upgrade, when in fact she had not done so. PNC considered such conduct to include acts of dishonesty. SOF ¶¶ 42, 53.[8]

---

[5] Plaintiff disputes what prompted Ms. Agurs to return to her review of surveillance footage but does not dispute the timing of that return. *See* Pl. Br. ¶ 41.

[6] Although plaintiff disputes defendant's paragraph 19, she does not challenge the underlying conclusion regarding the account's upgrade and the $500 withdrawal. *See* Pl. Br. ¶ 19.

[7] Although plaintiff disputes the accuracy of these conclusions, she does not dispute that they are the conclusions Ms. Agurs reached. *See* Pl. Br. ¶ 26–27.

[8] Plaintiff disputes defendant's paragraphs 42 and 53, but disputes only the accuracy of Ms. Agurs's investigation; she

12. On December 27, 2019, Ms. Agurs placed plaintiff on paid administrative leave, pending the final outcome of the investigation. SOF ¶ 43.[9]

13. After being placed on administrative leave, plaintiff believed her options were to resign during the investigation or wait for it to conclude and be terminated. Indeed, the conduct described in Ms. Agurs's investigation file would have resulted in plaintiff's termination, had the investigation proceeded to a final conclusion. SOF ¶¶ 44, 53.[10]

14. On December 27, 2019, at 7:17 p.m., plaintiff submitted her resignation. SOF ¶ 45.

15. On January 1, 2020, plaintiff attempted to rescind her resignation. SOF ¶ 51.[11]

16. Ms. Agurs declined to accept the attempted rescission. SOF ¶ 52.[12]

17. On February 13, 2020, plaintiff filed an administrative complaint with the United States Occupational Safety and Health Administration ("OSHA"). Plaintiff did not receive a final decision on that complaint within 180 days of its filing date. Compl. at ¶ 14.

18. On September 24, 2020, plaintiff filed the instant action with this Court. Her complaint includes a single count for retaliatory termination in violation of SOX. Compl. at ¶¶ 42–52.

19. On April 12, 2021, defendant moved for summary judgment. Plaintiff responded on April 26, 2021, and the Court heard oral argument on May 21, 2021. Dkt. Nos. 23, 26, 30.

---

does not dispute that these paragraphs "accurately describe[] what Ms. Agurs found." Pl. Br. ¶¶ 42, 53.

[9] Plaintiff disputes defendant's paragraph 43 only because it does not include that Ms. Agurs "admitted that [plaintiff] was going to be terminated." Pl. Br. ¶ 43. That position does not controvert the accuracy of what defendant states in its paragraph 43.

[10] Plaintiff does not dispute defendant's paragraph 44 and does not dispute that defendant's paragraph 53 "accurately describes what Ms. Agurs found." Pl. Br. ¶¶ 44, 53.

[11] Plaintiff disputes defendant's paragraph 51, Pl. Br. ¶ 51, but she does not dispute that she "asked for her resignation to be rescinded and an independent investigation conducted, but Ms. Agurs denied her request." *Id.* This does not controvert defendant's paragraph 51, as stated here.

[12] Plaintiff disputes defendant's paragraph 52, Pl. Br. ¶ 52, but she does not dispute that "Ms. Agurs would not let her rescind her resignation." *Id.* This does not controvert defendant's paragraph 52, as stated here.

## II. LEGAL STANDARD

Summary judgment is proper where, viewing the facts in a light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). A party opposing a motion for summary judgment must respond with specific facts, supported by proper documentary evidence, showing that a genuine dispute of material fact exists and that summary judgment should not be granted in favor of the moving party. *Anderson*, 477 U.S. at 250. As the Supreme Court has held, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 447 U.S. at 247-48). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 446 U.S. at 248.

## III. DISCUSSION

A SOX whistleblower retaliation claim proceeds under a burden-shifting framework. *See Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008). A plaintiff bringing such a claim "must first establish a *prima facie* case by proving, by a preponderance of the evidence, that '(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action.'" *Feldman v. L. Enf't Assocs. Corp.*, 752 F.3d 339, 344 (4th Cir. 2014) (quoting *Allen v. Admin. Review Bd.*, 514 F.3d 468, 485–76 (5th Cir. 2008)).

Once a plaintiff establishes her *prima facie* case, the burden shifts to the defendant to "demonstrat[e] by clear and convincing evidence that the employer would have taken the same

6

personnel action in the absence of the protected activity." *Puffenbarger v. Engility Corp.*, 151 F. Supp. 3d 651, 658 (E.D. Va. 2015). "Put differently, a defendant can prevail by establishing, by clear and convincing evidence, that the putative activity was not a 'but for' cause of the unfavorable personnel action." *Id.*

Here, defendant argues that plaintiff cannot make her *prima facie* case. That is, defendant asks the Court to find that: (1) plaintiff did not engage in protected activity under SOX when she raised internal complaints to Ms. Bouairi; (2) plaintiff did not suffer an adverse employment action; and (3) plaintiff cannot show that her internal complaints contributed to defendant's decision to place her on paid administrative leave and reject her attempt to rescind her subsequent resignation. Def. Br. (Dkt. No. 24) at 13–17. Moreover, defendant argues that even assuming plaintiff could carry her burden of establishing a *prima facie* case of retaliation, defendant still must prevail because the "clear and convincing evidence" in the record shows that plaintiff's internal complaints were not a "but for" cause of her ultimate separation from PNC and that defendant would have taken the same personnel action based on Ms. Agurs's investigation file regardless of plaintiff's internal complaints. *Id.* at 17–19.

In support, defendant provided the Court with evidence in the form of deposition excerpts (including exhibits) from plaintiff, Ms. Bouairi, and Ms. Agurs, as well as a separate declaration from Ms. Agurs (also with exhibits). *See* Dkt. Nos. 24-1–24-4. Plaintiff countered with competing evidence in the form of excerpts from the same depositions, as well as documents produced by the parties in discovery. *See* Dkt. Nos. 26-1–26-19.

When considering both the undisputed facts and this evidence against the above legal standard, and for the reasons stated below, the Court finds that defendant's motion must be granted.

### A. Plaintiff's *Prima Facie* Case

#### i. Protected Activity

To establish that she engaged in protected activity under SOX, plaintiff must make a *prima facie* showing that "she had both a subjective belief and objectively reasonable belief" that the conduct she reported involved specific types of fraud or violated any rule or regulation of the Securities and Exchange Commission. *See Welch*, 536 F.3d at 275; 18 U.S.C. § 1514A. The parties dispute whether any of plaintiff's oral complaints to Ms. Bouairi can satisfy either the subjective or objective tests under this element. The Court, however, need not resolve this issue for purposes of summary judgment because, as explained further below, plaintiff is unable to make out a *prima facie* case for retaliation. Accordingly, the Court is not required to resolve whether the allegations made by plaintiff regarding the improper pocketing of a $5 bill or other misconduct alleged establish the type of fraud or other unlawful conduct specified by SOX.

#### ii. Unfavorable Personnel Action

SOX provides that no covered company "may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee." 18 U.S.C. § 1514A(a). An employer violates this provision when it causes an employee to suffer an "unfavorable personnel action" in response to her protected activity. *Feldman*, 752 F.3d at 344.

Courts have interpreted this "unfavorable personnel action" element of a SOX antiretaliation claim to require the same showing of a "materially adverse action" that is needed to support an antiretaliation claim under Title VII of the 1964 Civil Rights Act. *See Halliburton, Inc. v. Admin. Review. Bd.*, 771 F.3d 254, 260 (5th Cir. 2014) (citing *Burlington Northern & Santa Fe*

*Railway Co. v. White*, 548 U.S. 53 (2006) and *Allen*, 514 F.3d at 476 n.2, when finding same "material-adversity standard applied to SOX's antiretaliation provision as well as Title VII's").

Plaintiff claims she suffered an unfavorable personnel action when defendant placed her on administrative leave with termination "inevitabl[y]" to follow. *See* Pl. Br. at 24–25. A person who has been placed on administrative leave and then terminated has suffered an unfavorable personnel action. *See Mullins v. Sw. Virginia Reg'l Jail Auth.*, Case No. 1:21-cv-028, 2013 WL 5945653, at *6 (W.D. Va. Nov. 6, 2013). So, too, has someone who is placed on administrative leave and then removed from her position or given the formal option between accepting a new position and resigning. *See Arrington v. ER Williams, Inc.*, Case No. 1:11-cv-535-JCC, 2011 WL 6301046, at *6 (E.D. Va. Dec. 16, 2011); *Ze-Ze v. Kaiser Permanente Mid-Atlantic States Regions, Inc.*, Case No. 1:10-cv-959-LMB, 2011 WL 2678823, at *4 (E.D. Va. June 29, 2011). But being placed on paid administrative leave, without more, is not an unfavorable personnel action in this Court. *See Lacasse v. Didlake, Inc.*, 194 F. Supp. 3d 494, 502 (E.D. Va. 2016) (Hilton, J.) ("Paid leave is not an adverse employment action."); *Studivant v. Geren*, Case No. 1:09-cv-586-LOG, 2009 WL 4030738, at *6 (E.D. Va. Nov. 19, 2009) ("placing an individual on paid administrative leave does not constitute an adverse employment action . . . in the retaliation context."); *see also Hornsby v. Watt*, 217 F. Supp. 3d 58, 66 (D.D.C. 2016) ("[i]n light of this near-universal consensus, the Court concludes that placing an employee on paid administrative leave does not, in and of itself, constitute a materially adverse action for purposes of a retaliation claim").

Plaintiff argues that by the time she was placed on administrative leave, Ms. Agurs had already completed her investigation into plaintiff and plaintiff's subsequent termination was therefore a foregone conclusion. *See* Pl. Br. at 25. The exhibits plaintiff attaches to her opposition brief, however, show the opposite. Specifically, plaintiff's own evidence establishes:

9

(1) Ms. Agurs recommended that plaintiff be "physically placed out" on administrative leave "until the conclusion of the investigation"; (2) plaintiff was placed on administrative leave on Friday, December 27, 2019; (3) plaintiff was advised that her administrative leave would continue "pending the outcome" of Ms. Agurs's "review"; (4) plaintiff resigned hours later; and (5) Ms. Agurs's investigation file was not closed until December 30, 2019—the Monday after plaintiff's Friday resignation. Dkt. No. 26-7 at 6, 10; Dkt. No. 26-8 at 31–32.

Against these facts, plaintiff testified that when she left the office on December 27, 2019, to begin her period of administrative leave, Ms. Bouairi relayed her subjective belief that defendant would "fire [plaintiff] on Monday." Dkt. No. 26-2 at 22. Specifically, plaintiff testified that Ms. Bouairi disclaimed any knowledge as to why defendant would take such action and simply advised plaintiff: "[Y]ou'll get fired, so you can do a resignation." *Id*. Accepting this version of events as true, the exchange merely shows that Ms. Bouairi—who explicitly did not make personnel decisions regarding plaintiff, *see* SOF ¶ 54—informally encouraged plaintiff to resign without any imprimatur of official action. Critically, plaintiff's version of events shows that Ms. Bouairi made that suggestion to plaintiff *before* defendant removed plaintiff from her position, terminated her, or otherwise took any action that could be considered adverse. Ms. Agurs's investigation file confirms as much: "[plaintiff] provided her resignation to Regional Manager prior to ER communicating the termination outcome." Dkt. No. 26-7 at 6.

This evidence shows that while defendant *did* place plaintiff on administrative leave, defendant *did not* have the opportunity to do anything more. Because "placing an employee on paid administrative leave does not, in and of itself, constitute a material adverse action for purposes of a retaliation claim," plaintiff has failed to carry her burden of proof with respect to the "unfavorable personnel action" prong of her *prima facie* case. *Hornsby*, 217 F. Supp. 3d at 66. The

fact that defendant rejected plaintiff's later attempts to rescind her resignation does not change the outcome. *See Shaw v. Yale New Haven Hosp.*, Case No. 3:18-cv-00067, 2020 WL 1923599, at *8 (D. Conn. Apr. 21, 2020) ("federal courts across the country have held that the refusal to allow recission of a voluntary resignation does not constitute an adverse action") (internal citations and quotations omitted).

        *iii.*    *Causation*

To make a *prima facie* showing that a plaintiff's protected activity was a contributing factor in a defendant's unfavorable personnel action, a plaintiff must point to evidence of actual causation between the protected activity and the adverse action. *Deltek, Inc. v. Dep't of Lab., Admin. Rev. Bd.*, 649 F. App'x 320, 336 (4th Cir. 2016). A "contributing factor" is "any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Feldman*, 955 F. Supp. 2d at 553. Even assuming *arguendo* that plaintiff suffered an unfavorable personnel action, she nonetheless fails to make a showing of causation.

Ms. Agurs began investigating W.A.'s complaint on September 17, 2019. *See* Dkt. No. 26-7 at 4. Plaintiff argues that Ms. Agurs closed her investigation of plaintiff four days later, but the record evidence she cites in support shows only that: (1) Bonnie Kopelic in defendant's Executive Client Relations department closed *her* file on the W.A. complaint after resolving it with W.A. at 2:43 p.m. on September 16, 2019; and (2) four minutes later, Ms. Kopelic referred W.A.'s complaint to Ms. Agurs for an investigation into the employee conduct underlying W.A.'s complaint. *See* Dkt. Nos. 26-6, 26-7. Even when viewing the facts in the light most favorable to plaintiff, there is no connection between the date when defendant's Executive Client Relations department resolved the W.A. matter from its perspective and the status of Ms. Agurs's investigation into the underlying employee conduct on behalf of ERIC.

Instead, Ms. Agurs's file shows that her investigation remained open through plaintiff's date of resignation. *Compare* Dkt. No. 26-7 at 2 (investigation file created on September 17, 2019, after referral from Bonnie Kopelic on September 16, 2019,) *with id.* at 6 (investigation file closed on December 30, 2019 following plaintiff's resignation). Because there is no evidence that Ms. Agurs ever closed her investigation of plaintiff before December 30, 2019, the record shows that plaintiff made each of her complaints to Ms. Bouairi (*i.e.*, engaged in allegedly protected activity)[13] while Ms. Agurs's investigation of the W.A. complaint remained pending. That investigation, therefore, cannot have commenced in response to plaintiff's allegedly protected activity.

Plaintiff responds that even if the investigation did not commence in response to her protected activity, it gained momentum and reached its ultimate conclusion only after she threatened to appeal Ms. Agurs's findings regarding C.A. *See* Pl. Br. at 26. Plaintiff offers no evidence that she made this threat to anyone other than Ms. Bouairi and there is no evidence that Ms. Bouairi relayed this message to Ms. Agurs or anyone else. Nor is there any evidence in the record that Ms. Bouairi herself had any influence over Ms. Agurs's investigation. Additionally, there is no dispute that plaintiff's threats of escalation do not themselves constitute protected activity. Thus, there is no basis for a factfinder to determine that any of plaintiff's complaints to Ms. Bouairi ultimately influenced Ms. Agurs's decision to ramp up her investigation into the W.A. matter and subsequently place plaintiff on administrative leave. The requisite causal connection simply does not exist.

---

[13] It is worth noting that the evidence shows that Ms. Bouairi only escalated plaintiff's October 18, 2019, complaint regarding the $5 deposit discrepancy to Ms. Agurs's attention. *See* Pl. Br. ¶ 29.

Even assuming plaintiff can create a *prima facie* case for causation, defendant has responded with clear and convincing evidence that plaintiff's complaints were not the "but for" cause of defendant's decision to place plaintiff on paid administrative leave. Defendant has established procedures for investigating and remediating allegations of employee misconduct. SOF ¶¶ 4–13. Despite plaintiff's challenges to Ms. Agurs's methods for conducting and documenting such investigations, defendant has offered no evidence to suggest that Ms. Agurs deviated from defendant's procedures while undertaking the investigation of plaintiff. *See Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 929 (4th Cir. 1990) ("Mere assertions by the plaintiffs are not enough to survive summary judgment."). Plaintiff, therefore, fails to provide any basis for concluding that defendant could not have relied on Ms. Agurs's investigative report when it took the personnel action it did. *See Feldman*, 752 F.3d at 350 (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)) (in SOX case, the court does "not decide whether [defendant]'s reason for terminating [plaintiff] was wise, fair, or correct, nor do[es the court] 'sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination'"). Accordingly, defendant is entitled to summary judgment on this basis, as well.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment shall be granted. An appropriate Order shall issue.

/s/
Michael S. Nachmanoff
United States District Judge

November 29, 2021
Alexandria, Virginia